UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CARY DEPAOLO, | ) |  |
|---|---|---|
| Plaintiff | ) |  |
| v. | ) | No. 2:16-cv-00468-NT |
| GHM PORTLAND MAR, LLC, d/b/a PORTLAND MARRIOTT AT SABLE OAKS, | ) |  |
| Defendant | ) |  |

### MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT[1]

Defendant GHM Portland Mar, LLC, d/b/a Portland Marriott at Sable Oaks ("GHM") sought to strike plaintiff Cary DePaolo's expert designation of Carlyle B. Voss, M.D., pursuant to Federal Rule of Civil Procedure 37(c)(1) on the bases that the initial designation was deficient pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and that a supplemental expert report by Dr. Voss was untimely and prejudicial. Treating its request as an oral motion to strike the Voss designation, I denied it during an earlier telephonic hearing. I elaborate herein to distinguish that decision from a decision issued today in *Downing v. Select Rehab., Inc.*, No. 2:16-cv-00552-GZS (D. Me.), in which I have granted the plaintiff's motion to exclude the defendant's expert's testimony in part on the basis of its insufficiency pursuant to Rule 26(a)(2)(B).

---

[1] DePaolo sued Ocean Properties, LTD. ("OPL") as well as GHM. *See* Complaint and Jury Trial Demand ("Complaint") (ECF No. 1). However, on August 29, 2017, he filed a stipulation of the dismissal of his claims against OPL. *See* ECF No. 35. Therefore, I refer to the defendant/defendants as "GHM," even when describing events that occurred prior to the dismissal of OPL.

1

## I. Manner in Which To Raise Disputes Over Sufficiency of Expert Designations

In both this case and *Downing*, disputes over the sufficiency of expert designations were raised by way of motions filed in the absence of any attempt by the movants to meet and confer with opposing counsel in a good-faith effort to resolve those issues privately. This was improper. In each case, as discussed below and in *Downing*, that impropriety proves not to be dispositive against the movants. However, on different facts, it could be. *See White v. Meador*, 215 F. Supp.2d 215, 221 (D. Me. 2002) (denying defendants' motion to strike expert designation in part on basis that they raised no issue with plaintiff or court regarding its insufficiency until months had passed and the case had been scheduled for trial; observing, "Counsel must at least give opposing counsel a timely opportunity to remedy omissions in the required designations before seeking assistance from the court in obtaining the necessary information, which should also be done well before the close of discovery.").

The Bar is reminded that a dispute over the sufficiency of an expert designation is a discovery dispute to be handled in the manner prescribed by Local Rule 26(b). That rule prohibits the filing of written discovery motions without the prior approval of a judicial officer and directs that "[a] party with a discovery dispute . . . first confer with the opposing party in a good faith effort to resolve by agreement the issues in dispute[,]" failing which "the moving party shall then seek a prompt hearing with a judicial officer by telephone or in person." Loc. R. 26(b).

## II. Motion To Strike Designation

### A. Applicable Legal Standard

Federal Rule of Civil Procedure 26 provides, in relevant part, that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence[.]" Fed. R. Civ. P. 26(a)(2)(A). "A party must make these disclosures at the times and in the sequence

that the court orders." *Id*. at (a)(2)(D). Both Rule 26(a)(2)(B) and the court's scheduling order provide that, if an expert witness is retained or specially employed to provide testimony in the case, or is a party's employee whose duties regularly involve giving expert testimony, the disclosure must contain six categories of information, although, pursuant to the court's scheduling order, that information need not be provided in the form of a written report prepared and signed by the expert. *See id*. at (a)(2)(B); Scheduling Order (ECF No. 23) at [2].

The six categories of information required to be disclosed include: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;" and "(ii) the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. (a)(2)(B)(i)-(ii).

Rule 26 also states:

For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The movant bears the burden of demonstrating that a late and/or insufficient expert designation is either substantially justified or harmless. *See, e.g., United States Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

"The baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010) (citations and internal punctuation omitted). However, the court retains discretion to impose other sanctions in lieu of,

3

or in addition to, mandatory preclusion. *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g., Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009) ("Preclusion . . . is not a strictly mechanical exercise. And, in its discretion, the district court may choose a less severe sanction. Where a district court does opt in favor of preclusion, we review that decision with reference to a host of factors, including: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects – e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.") (citations and some internal quotation marks omitted).

### B. Factual Background

DePaolo, a former longtime employee of the Marriott Hotel in South Portland, filed suit on September 15, 2016, alleging that after he was diagnosed with lymphoma in late 2013 and began chemotherapy treatment in January 2014, the hotel's General Manager, Edward Palmer, became increasingly hostile toward him, refused to make reasonable accommodations for his disability, and began to verbally abuse and berate him, triggering symptoms of post-traumatic stress disorder ("PTSD") with which DePaolo had been diagnosed in 1972 in connection with his military service. Complaint ¶¶ 1, 7-15.

DePaolo alleges that he complained on several occasions to the Human Resources Manager, but that no action was taken. *See id*. ¶ 16. He adds that, as a result of the ongoing verbal abuse and refusals to accommodate, his PTSD worsened to the point that he took an approved extended medical leave of absence in January 2015 pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. *See id*. ¶¶ 18-20. He alleges that, despite knowing that he was out on approved FMLA leave, Palmer informed him that if he wished to return, he could no

4

longer be Chief Engineer and would receive a reduction in pay. *See id.* ¶ 21. On April 13, 2015, on his doctor's advice that returning to work after the expiration of his leave would be dangerous to his health, DePaolo gave notice that he could not and would not return to work. *See id.* ¶¶ 23-25.

DePaolo sues GHM for disability discrimination, retaliation, and the creation of a hostile work environment in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 831 *et seq.* (Count I), and for interference with his rights pursuant to the FMLA and retaliation against him for taking leave, in violation of the FMLA (Count II). *See id.* ¶¶ 26-33.

In a scheduling order issued on February 15, 2017, the court set deadlines of May 2, 2017, for the plaintiff's designation of experts, June 6, 2017, for the defendant's designation of experts, and July 5, 2017, for the close of discovery. *See* Scheduling Order at [2].

On May 2, 2017, DePaolo served GHM the written expert designation of Dr. Voss, a board-certified psychiatrist, disclosing that he intended to present Dr. Voss's testimony to support his "claims that Defendants' acts and omissions caused him to suffer psychological injury, including but not limited to severe emotional distress."[2]

The designation included a section titled "Nature and Scope of Expertise and Opinion," stating, in its entirety, with the omission of a footnote:

> Dr. Voss will be provided with Plaintiff's medical and mental health records and a copy of the Complaint. He will meet with and examine Plaintiff in the near future. Dr. Voss will provide a written report expressing his opinion and the bases and reasons supporting his opinion within two to three weeks of the examination.

---

[2] Expert designations are not typically filed on the court's docket, CM-ECF. At my direction, GHM's counsel provided copies of Dr. Voss's initial designation, and a supplemental report he later authored, to the court by email dated June 27, 2017.

> Dr. Voss is expected to testify that the discrimination, harassment, hostile work environment, and adverse actions to which Plaintiff was subjected caused him to suffer psychological harm, including severe emotional distress.
>
> Dr. Voss will testify that the Plaintiff suffered from pre-existing mental and emotional distress as a result of trauma he experienced while enlisted in the United States Army in the 1970's, and more specifically while on active duty in Vietnam.
>
> Plaintiff was diagnosed many years ago with Post Traumatic Stress Disorder (PTSD) by Veterans Administration medical and mental health providers, who have treated Plaintiff at the VA Medical Center (Togus) in Augusta, Maine.
>
> Dr. Voss is expected to explain to the jury how the discrimination, harassment, hostile work environment, and adverse employment action to which Plaintiff was subjected in this case exacerbated his pre-existing emotional condition.
>
> Plaintiff notes that discovery has not been completed in this case. Nor have any parties conducted depositions. Documents and information provided by Plaintiff, defense witnesses, and other parties through the course of litigation may generate additional opinions or further support the expected opinions noted above.

DePaolo attached a copy of Dr. Voss' *curriculum vitae* and billing policies and rates to the Voss designation.

On June 6, 2017, the deadline for GHM's expert designation and a month after DePaolo had designated Dr. Voss, GHM filed a motion to strike the Voss designation. *See* ECF No. 24 (subsequently stricken). In response, on June 15, 2017, DePaolo filed a motion to strike GHM's motion, in part on the basis that, in violation of Local Rule 26(b), GHM had not met and conferred with him to attempt to resolve the dispute and had failed to seek leave of court to file its motion. *See* ECF No. 25.

On June 20, 2017, DePaolo served GHM a 22-page supplemental report of Dr. Voss, completed after Dr. Voss had examined DePaolo and reviewed his medical records. The supplemental report was served prior to GHM's deposition of DePaolo on June 22, 2017, during which he was examined regarding that report. DePaolo's deposition lasted six to seven hours, and he testified for approximately five hours excluding breaks.

During a telephonic hearing on June 27, 2017, I granted DePaolo's motion to strike GHM's motion, noting that the sufficiency of DePaolo's expert designation constituted a discovery dispute that should be handled in the manner prescribed by Local Rule 26(b). *See* ECF No. 31. I directed GHM to email the court a description of the discovery dispute, along with copies of the initial Voss designation and supplemental Voss report, by June 28, 2017, and DePaolo to respond by email by June 30, 2017, in advance of a further telephonic hearing on the matter. *See id*.

## C. Discussion

Treating the parties' discovery dispute as an oral motion by GHM to strike DePaolo's designation of Dr. Voss pursuant to Rule 37, I denied it during the foregoing final telephonic hearing for the reasons that follow.

### 1. Parties' Arguments

In GHM's email to the court and during oral argument, it contended that (i) the initial Voss designation failed to provide a complete and accurate statement of Dr. Voss's opinions and the bases therefor, (ii) the supplemental Voss report was untimely, conflicted with the initial designation, and injected new issues, and (iii) GHM was prejudiced by the provision of the supplemental report just two days prior to DePaolo's deposition and 15 days before the then-operative discovery deadline, as well as by factual discrepancies between the initial designation and supplemental report.[3] GHM contended that the supplemental report called into question its decision, based on the initial designation, not to retain a competing expert, especially to the extent that Dr. Voss stated in his supplemental report that DePaolo's verbal confrontations with his supervisor resonated with, and reminded him of, the traumatic assault he experienced in the Navy.

---

[3] Like expert designations, emails to the court regarding discovery disputes are not typically filed on the court's docket, CM-ECF.

GHM complained that it did not have adequate time to prepare to address the issues raised by the supplemental report during DePaolo's deposition, depose Dr. Voss, conduct further discovery regarding previously undisclosed facts contained in the supplemental report, or retain a competing expert. It argued that it would be severely prejudiced by an extension of the discovery deadline because it would have to incur significant costs to engage in the additional discovery it had described, including re-deposing DePaolo. GHM asserted that DePaolo had never informed it or the court of any delay due to his health.

DePaolo rejoined that (i) his initial designation provided ample information to permit GHM to designate its own expert, (ii) at no time prior to June 6, 2017, GHM's own deadline to designate experts, did it inform him that it considered his initial designation insufficient, (iii) there was no need to re-depose him, as he was examined extensively on the contents of the expert report, and, (iv) even if the expert designation was insufficient, the delay was harmless and substantially justified, and any resulting prejudice could be mitigated by extending the discovery deadline to permit GHM to depose Dr. Voss.

With respect to harm, DePaolo argued that GHM created the prejudice of which it complained by filing a motion to strike rather than conferring with him regarding the asserted insufficiency of his designation and possible deadline extensions. He added that the Voss opinion on his PTSD was not a particularly complex area of expert testimony and did not present a new theory of damages.

With respect to substantial justification, he contended that he had indicated in his Rule 26(a)(1) initial disclosure that he had intended to use a Veterans' Administration ("VA") treating physician as his expert witness but had subsequently learned that the VA prohibits its physicians from serving as expert witnesses. He stated that he then became seriously ill and had to be

8

hospitalized while his counsel worked to identify an appropriate replacement expert. He represented that he was not available to be examined until early June and was examined by Dr. Voss on June 5, 2017, whereupon Dr. Voss produced his report 15 days later. He stated that GHM was aware that he was very ill and that his availability was severely limited.

## 2. Analysis

As a threshold matter, I am unpersuaded that the initial Voss designation was insufficient. That designation indicated that Dr. Voss was expected to testify that the discrimination, harassment, hostile work environment, and adverse actions to which DePaolo was subjected caused him to suffer psychological harm, including severe emotional distress, and exacerbated a preexisting PTSD condition. It added that Dr. Voss was expected to base this opinion on his review of DePaolo's medical and mental health records and the complaint in this action, as well as an examination of DePaolo.

While pithy, this was a complete statement of Dr. Voss's expected opinions and the bases therefor, distinguishing it from other cases in which this court has deemed an initial expert designation insufficient pursuant to Rule 26(a)(2)(B). *Compare, e.g., Goldenson v. Steffens*, No. 2:10-CV-440-JAW, 2012 WL 2603143, at *5 (D. Me. July 5, 2012) (initial designation that "effectively was nothing more than a placeholder[,]" with no statement of any opinion that the expert would express when he had sufficient data, insufficient); *Griffith v. Eastern Me. Med. Ctr.*, 599 F. Supp.2d 59, 62 (D. Me. 2009) (initial designation stating that expert would "opine the approximate value of economic loss to [the plaintiff] due to [the defendants'] acts described in the complaint" clearly insufficient).

Contrary to GHM's arguments, the supplemental Voss report did not exceed the scope of a proper supplementation or contain prejudicial factual variances. GHM complained that the supplemental report disclosed, for the first time, that (i) the plaintiff developed PTSD as a result

9

of an incident that occurred at boot camp rather than while he was on active duty in Vietnam, (ii) he was in the Navy rather than the Army, and (iii) he never went to Vietnam. But none of those factual variances presents a new theory of damages or is inconsistent with Dr. Voss's opinion that the conduct of which the plaintiff complains exacerbated his preexisting PTSD.

Indeed, consistent with his initial designation, Dr. Voss concluded in his supplemental report that DePaolo had preexisting PTSD that was exacerbated by GHM's conduct. The supplemental report, therefore, is within the scope of the initial designation. *See, e.g., Maine Med. Ctr. v. William A. Berry & Son, Inc*., 2:16-cv-00052-JDL, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017) ("Supplementation as contemplated by Rule 26 is a method of correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure. If a supplemental expert disclosure presents a new theory of the case, the district court has the discretion to exclude it and if it represents a refinement, the expert should be allowed to testify.") (citations and internal punctuation omitted).

By contrast, in *Downing*, the defendant filed a supplemental report nearly three months after its expert designation deadline and a week prior to the close of discovery that highlighted deficiencies in the initial designation, disclosing for the first time (i) specific sections of voluminous Medicare materials on which the expert had relied, (ii) his reliance on a therapy services agreement between the employer and the facility where the plaintiff had worked, (iii) his reliance on an unredacted email communication disclosing a patient name that the plaintiff's counsel represented had never been produced to her client during discovery, (iv) rationales for his conclusions, and (v) an arguably broader opinion.

In any event, even assuming *arguendo* that the initial designation of Dr. Voss was insufficient, DePaolo met his burden of showing substantial justification for its presumed

insufficiency. He explained that he intended to use his treating VA physician as his expert but discovered that VA rules precluded her from doing so and that he became ill while his counsel was searching for a replacement expert. He was too ill to be examined by his new expert, Dr. Voss, as of his expert designation deadline. However, he disclosed in his initial designation that he intended to meet with Dr. Voss in the "near future" and that Dr. Voss was expected to supplement his report two to three weeks thereafter. That was exactly what happened.

In similar vein, in *Robinson v. Miller*, No. 2:11-cv-56-JHR, 2011 U.S. Dist. LEXIS 150613 (D. Me. Dec. 30, 2011), this court declined to strike an expert designation when the plaintiffs had placed the defendant on notice in that designation, and the court agreed, that a complete designation was not possible until their expert had reviewed requested legal documents and records and the anticipated testimony of the defendant's expert witness. *See Robinson*, 2011 U.S. Dist. LEXIS 150613, at *7-*8.

By contrast, in *Fortin v. Town of Wells*, Civil No. 09-179-P-S, 2009 WL 3327200 (D. Me. Oct. 13, 2009), the court found no substantial justification when a plaintiff supplied no reason for his tardy designation of one expert witness and a poor reason for his incomplete designation of another – that the second expert needed to review transcripts of depositions of the defendants. *See Fortin*, 2009 WL 3327200, at *3 ("An expert witness's expected testimony will always be more complete and focused after the defendant's testimony or the defendant's version of events is on record under oath. That fact does not justify a refusal to provide an initial, complete expert designation, based on the information available to the plaintiff before depositions are taken[.]").

While, as GHM argued, DePaolo could have filed a motion to extend his deadline to designate experts based on his illness, in the totality of the circumstances that does not tip the balance in favor of striking the designation. Significantly, at no point did GHM seek to meet and

confer with DePaolo regarding the sufficiency of the initial Voss designation as required by Local Rule 26(b). Instead, it filed an improper motion to strike that designation on June 6, 2017, which, as it happened, was the day after the plaintiff was examined by Dr. Voss.

As I conclude on similar facts in *Downing*, GHM's period of inaction was not, in itself, of sufficient magnitude to warrant the denial of its motion to strike. As noted above, in *White*, this court denied a motion to strike an expert designation in part on the basis that the movants had raised no issue with the opposing side or the court regarding the designation's insufficiency until months had passed and the case had been scheduled for trial. *See White*, 215 F. Supp.2d at 221. In this case, by contrast, GHM raised the issue approximately a month before the expiration of the discovery deadline, enabling the court to treat it as a discovery dispute pursuant to Local Rule 26(b).

Nonetheless, the fact that GHM did not put DePaolo on notice that it objected to the Voss designation until the day after he underwent examination by Dr. Voss bolsters DePaolo's argument that he was substantially justified in proceeding in the manner he had outlined in the initial Voss designation and that any prejudice suffered by GHM was, at least in part, a product of its own making. *See, e.g., Goldenson*, 2012 WL 2603143, at *7 (tardiness of expert designation was substantially justified when plaintiffs put defendants on notice as of their expert designation deadline that expert's ability to provide opinions was contingent on his review of critical documents that defendants were withholding pending resolution of discovery disputes, and defendants raised no objection to insufficient designation until attempts to schedule expert's designation by discovery deadline failed).

Finally, and again assuming *arguendo* that the initial Voss designation was insufficient, I concluded that examination of relevant factors, *see Esposito*, 590 F.3d at 77-78, counseled against

the preclusion of Dr. Voss's testimony. Neither side had previously requested any deadline extension; DePaolo had no history of delay or dilatory tactics; his need for the Voss evidence to prove damages caused by the alleged exacerbation of his PTSD was great; and he had shown substantial justification for his inability to make an initial disclosure as detailed as his supplemental disclosure. Finally, any prejudice suffered by GHM as a result of the provision of the Supplemental Voss Designation two days before DePaolo's deposition and 15 days before the close of discovery could be mitigated by the scheduling order adjustments detailed below. *See, e.g., Downeast Ventures, Ltd. v. Washington Cty.*, 450 F. Supp.2d 106, 113 (D. Me. 2006) (holding that tardy designation of expert witness was harmless, and hence permissible, when, *inter alia*, there was "no history of untoward conduct in the litigation, such as a persistent flouting of court rules and orders," the plaintiff had "a critical need to present evidence of the value of the equipment it contends was wrongfully seized[,]" "[i]ts justification for the non-disclosure was confusion about the need for expert disclosure of a corporate employee valuation witness, a somewhat murky area of law[,]" and the defendants "should be able to overcome the adverse effects of the non-disclosure") (citation and internal quotation marks omitted).

By contrast, in *Downing*, the defendant's need for the evidence at issue was not great, and it offered no substantial justification for its facially inadequate initial designation or its provision of a materially different expert report nearly three months after the expiration of its expert designation deadline and one week prior to the close of discovery.

### III. Amendments to Scheduling Order

For the foregoing reasons, I provided GHM the opportunity to re-depose DePaolo, should it elect to do so, for a period of up to two hours of direct examination excluding interruptions, objections, and breaks. I denied a request by DePaolo's counsel to limit the subject matter of the

13

continued deposition. Finally, I extended GHM's deadline to designate experts to August 10, 2017, and the discovery deadline to August 31, 2017.

## IV. Conclusion

For the foregoing reasons, GHM's oral motion to strike the plaintiff's expert, Dr. Voss, is **DENIED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 31st day of August, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge